UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS C. MCADAMS,

      Petitioner,

v.

THOMAS WINN, *Warden*,

      Respondent.

Case No. 20-11552
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1]**

---

Thomas C. McAdams was charged with first-degree criminal sexual conduct in Michigan. K.S., a 14-year-old girl, testified that McAdams forcibly and violently raped her in the bedroom of a home she went to after fighting with her parents. McAdams' DNA matched DNA samples collected from K.S.' vagina the morning after she was assaulted. McAdams was tried by a jury and ultimately convicted. He was sentenced as a fourth-offense habitual offender to 35 to 70 years in prison.

After raising various claims on direct appeal, McAdams now asks this Court to grant him a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1.) For the reasons that follow, McAdams' petition is denied.

**I.**

The Court primarily relies on the facts as recited by the Michigan Court of Appeals on McAdams' direct appeal of his conviction with a few additional details from the state trial-court record. *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir.

2009) (citing 28 U.S.C. § 2254(e)(1)); *Thompson v. Keohane*, 516 U.S. 99, 102 (1995) ("The statute governing federal habeas corpus proceedings, 28 U.S.C. § 2254, directs that, ordinarily, state-court fact findings 'shall be presumed to be correct.'").

On August 18, 2017, K.S., a 14-year-old girl, ran away from her parents' home and "eventually accompanied a woman to a home so that she could charge her cell phone." *People v. McAdams*, No. 344506, 2019 WL 5197732, at *1 (Mich. Ct. App. Oct. 15, 2019). "[McAdams] was present at the home when [K.S.] arrived. She testified that she sat on the same couch as [McAdams] and that he moved closer and began rubbing her arm. The woman then brought [K.S.] to an upstairs bedroom." *Id.* K.S. testified that she laid on the bed and "wrapped herself in blankets" when McAdams entered the room, laid next to her, pulled off the blankets and "began touching her underneath her clothes." *Id.*

"[McAdams] then asked [K.S.] if he could have sex with her, and she told him no. [He] then pulled off her pants. She tried to stand up, but [McAdams] pushed her back onto the bed. She tried to hold her legs closed, but [he] forced them apart, held them open with his elbows and forearms, unfastened his pants, and forcibly engaged in penile-vaginal penetration." *Id.*  K.S. testified that "it hurt" and that she later "discovered that her vagina was swollen, bleeding, and painful." *Id.*

"Another woman found [K.S.] in the bathroom and asked what happened. [K.S.] was crying, and she told the woman that [McAdams] had sexually assaulted her. The woman helped [K.S.] gather her belongings, and escorted her to the porch where she allowed [K.S.] to use her phone to call her mother and the police." *Id.*

The next morning, K.S. was interviewed and had a sexual assault examination that revealed bruises on her thighs, which she stated were from the assault. *Id.* DNA samples were collected from her vagina and sent to the Michigan State Police forensic laboratory for analysis. *Id.* "Forensic scientists were able to determine that there was male DNA in the sample that had been recently deposited, and there was a very high likelihood that the DNA belonged to [McAdams]. It was also determined that the swabs from [K.S.'] vaginal area contained seminal fluid." *Id.*

K.S. testified that memories of her rape caused her to suffer from panic and anxiety attacks almost every night, including a panic attack that was so severe an ambulance was called. (ECF No. 10-10, PageID.414.) She also testified that she tried to commit suicide by "swallow[ing] a bunch of" pills and was afraid to go out alone or be home alone. (*Id.*)

McAdams testified that "K.S. came to the house where he was staying and discussed being depressed." *McAdams*, 2019 WL 5197732, at *1. He admitted that he rubbed her arm and "touched her private areas with his hand, but he denied that he penetrated her or had sex with her." *Id.* "He claimed that he took [K.S.] to the bedroom where they smoked a joint with cocaine in it, that he left the house after they smoked, and that he did not know anything about the sexual assault allegations until he was arrested." *Id.* He also "claimed that he had erectile dysfunction and had not been able to have sex since 2014." *Id.* The jury found McAdams guilty of first-degree criminal sexual conduct and he was sentenced as a fourth-offense habitual offender to 35 to 70 years.

McAdams filed an appeal of right in the Michigan Court of Appeals, raising the same three claims raised in this petition—1) there was insufficient evidence of personal injury to support the conviction of first degree criminal sexual conduct; (2) his defense counsel was ineffective for failing to advise him that he was being charged as a fourth habitual offender until just before trial, such that he "was forced to go to trial without adequate time to weigh his options as to whether to proceed to trial, or take the plea offer that was being made to him just before the trial started"; and (3) his defense counsel was ineffective for failing to offer exculpatory scientific evidence— as well as a fourth claim not raised here. *See generally id.* at *2–4; (ECF No. 1, PageID.9.) The Michigan Court of Appeals affirmed McAdams' conviction. *McAdams*, 2019 WL 5197732, at *4–5. McAdams then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims he raised before the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *See People v. McAdams*, 940 N.W.2d 104 (Mich. 2020).

McAdams then filed this habeas petition raising the same three claims he raised before the Michigan Court of Appeals and the Michigan Supreme Court. (ECF No. 1, PageID.11–14.) The Warden opposes the petition. (ECF No. 9.)

## II.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). So to obtain relief

in federal court, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101. And a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), with review being "limited to the record that was before the state court," *Cullen*, 563 U.S. at 181. But if the state courts did not adjudicate a claim "on the merits," "AEDPA . . . does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

McAdams' sufficiency-of-the-evidence claim and ineffective-assistance-of-trial-counsel claims were raised in his direct appeal, and the Michigan Court of Appeals issued a decision on the merits. *See generally McAdams*, No. 344506, 2019 WL 5197732, at *2–5. The Court must defer to that decision.

So in considering McAdams' claims, the Court will focus on whether the Michigan Court of Appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law[.]" *See* 28 U.S.C. § 2254. And because the Michigan Supreme Court did not provide reasons for its holding on direct appeal, the Court will "'look through' the unexplained decision to the last related state-court

5

decision," here the Michigan Court of Appeals' decision, which "provide[s] [the] relevant rationale." *See Wilson*, 138 S. Ct. at 1192.

## III.

### A. Sufficiency of the Evidence

McAdams argues that there was insufficient evidence of personal injury for the jury to convict him of criminal sexual conduct in the first degree.

The Supreme Court has held "that the Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When a petitioner, like McAdams, challenges the sufficiency of the evidence underlying his conviction, the Court must view the trial testimony and exhibits "in the light most favorable to the prosecution" and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (internal quotations omitted). "Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational

trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution." *Id.*

On habeas review, McAdams faces an even steeper hurdle. Because both the *Jackson v. Virginia* standard and § 2254(d) apply to McAdams' sufficiency-of-the-evidence claim, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [appellate court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Id.* (citations omitted). In other words, it must be the case that the Michigan Court of Appeals' decision on this claim is contrary to or an unreasonable application of *Jackson v. Virginia*.

McAdams was convicted under Mich. Comp. Laws § 750.520b(1)(f), which requires the prosecutor to show that a defendant: (i) engaged in sexual penetration with another person; (ii) used force or coercion to accomplish sexual penetration; and (iii) caused personal injury to the complainant. *See* Mich. Comp. Laws § 750.521b(1)(f); *McAdams*, 2019 WL 5197732, at *2. The term "personal injury" means "'bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ.'" *McAdams*, 2019 WL 5197732, at *2. (quoting Mich. Comp. Laws § 750.520a(n)).

The Michigan Court of Appeals found there was a sufficient basis for the jury to conclude that McAdams caused personal injury to K.S. It found that K.S.' testimony that, after the assault, "her vagina was swollen, painful, and bleeding" and her thighs were bruised, was sufficient evidence for a rational jury to find she

sustained a bodily injury. *Id.* The court further found that the testimony was sufficient to show that K.S. suffered mental anguish which, "'in its ordinary and generally understood sense, means extreme or excruciating pain, distress, or suffering of the mind.'" *Id.* (quoting *People v. Petrella*, 424 Mich. 221, 257 (1986)).  In particular, the court relied on K.S.' testimony that she "developed panic and anxiety attacks after the assault, one so severe that an ambulance was called; she attempted suicide; she was admitted to a 13-day inpatient counseling program, and she was reluctant to be alone." *Id.* at *2–3.

The Michigan Court of Appeals did not unreasonably apply federal law in concluding that these facts supported a determination that McAdams' rape caused personal injury to K.S. K.S.' testimony concerning her physical injuries from the sexual assault and the resulting severe mental and emotional struggles, if believed by a jury, was more than sufficient to support the personal injury element. Although McAdams testified that he never penetrated or assaulted K.S., this Court may not reweigh the competing evidence offered at trial on habeas review. *See Davis*, 658 F.3d at 531. It may only determine whether the Michigan Court of Appeals acted unreasonably in determining that there was sufficient evidence of personal injury. And based on the facts underpinning the state court's decision, the jury had a sufficient basis to find that McAdams caused personal injury to K.S.

The state court's decision as to the sufficiency of the evidence of the personal injury element is thus neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

### B. Ineffective Assistance of Counsel

Next, McAdams argues that defense counsel was ineffective for several reasons.

To prevail on habeas corpus review for an ineffective-assistance-of-trial-counsel claim, McAdams must show that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-pronged test for claims of ineffective assistance of counsel: a habeas petitioner must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *See id.* at 687.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective-assistance-of-counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable" but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### 1. Fourth-Offense Habitual Offender

McAdams raises several ineffective-assistance-of-counsel claims related to the fourth-offense habitual offender sentencing enhancement.

First, he argues that defense counsel was ineffective for failing to advise him sooner of the possible consequences of proceeding to trial as a fourth-offense habitual offender. McAdams maintains that he was therefore unable to knowingly consider the plea offer extended to him before trial. But the record does not support this claim.

The habitual offender enhancement was discussed on the record several times before trial commenced. Almost two weeks before the trial, a plea offer was discussed on the record with McAdams present. The plea offer specifically included the dismissal of the habitual offender enhancement, which would have subjected McAdams to a 25-year mandatory minimum sentence. (ECF No. 10-5, PageID.157.) The prosecutor explained:

> And I just want to note for the record, if the Defendant, even if just convicted of Count Two, criminal sexual conduct in the third degree, you know, no force or coercion or anything like that, if he is just convicted of that, and obviously there is the habitual fourth offender notice, that requires this Court to sentence the Defendant to a minimum of 25 years in the Michigan Department of Corrections, of a minimum, even just on Count Two. So I just wanted to make sure that's clear on the record with regards to the offer.

(*Id.* at PageID.157–58).

On February 21, 2018, the second day of jury selection, McAdams attempted to accept a revised plea offer, which provided that he would plead guilty to first-degree criminal sexual conduct and be sentenced to 16 to 30 years in exchange for the prosecutor's withdrawal of the habitual fourth notice. (ECF No. 10-7, PageID.190–91.) But the trial court refused to accept the plea because McAdams would not admit to the factual predicate for the claim—penetration. (*Id.* at PageID.197.) Nevertheless,

10

the discussion of the plea offer indicates that McAdams was made aware he was being charged as a fourth habitual offender.

What is more, to demonstrate prejudice when defense counsel's deficient performance causes a defendant to reject an advantageous plea deal, the defendant must demonstrate a "reasonable probability" that the court would have accepted its terms. *Lafler v. Cooper*, 566 U.S. 156, 164 (citing *Missouri v. Frye,* 566 U.S. 134, 148 (2012)). Again, the trial court here declined to accept McAdams plea because he refused to admit to the penetration element of the crime. Accordingly, the Michigan Court of Appeals found no reasonable probability that, if McAdams had received earlier notice of the habitual offender enhancement, he would have admitted to the necessary factual predicate and the court would have accepted the plea. *McAdams*, 2019 WL 5197732, at *4. On this record, McAdams fails to show the Court of Appeals' decision was unreasonable.

McAdams also argues that his attorney was ineffective for failing to object to the fourth-offense habitual offender enhancement because his record did not include the predicate felonies and that the prosecutor improperly used the unsupported habitual offender enhancement as a bargaining tool in plea negotiations in violation of Michigan law.

But McAdams provides no evidence to show that he did not have the necessary predicate felonies to support the habitual offender enhancement. A review of the publicly available docket for the Scott County, Iowa District Court shows McAdams has three prior felonies.  *See State v. McAdams*, No. FECR333398; *State v. McAdams*,

No. FECR272181; *State v. McAdams*, No. FECR239028. Considering this record and the absence of any evidence calling it into question, McAdams fails to show that his attorney was ineffective for failing to argue that the fourth-offense habitual offender enhancement was unsupported.

Similarly, while it is true that a prosecutor may not threaten a defendant with a habitual offender enhancement as a tool in plea negotiations if the enhancement is not supported, *People v. Johnson*, 272 N.W.2d 200 (Mich. Ct. App. 1978), as noted above McAdams has not shown that the habitual offender charge was unsupported.

## 2. Scientific Evidence

Lastly, McAdams testified that he had suffered from erectile dysfunction since 2014 and that it prevented him from having penetrative intercourse with K.S. (ECF No. 10-12, PageID.638–40.) In support, defense counsel introduced a 2014 medical history report stating that McAdams suffered from erectile dysfunction. (*See* ECF No. 12, PageID.992.) But McAdams argues defense counsel should have done more.

The Michigan Court of Appeals rejected this claim, finding that McAdams failed to "indicate[] what evidence counsel should have presented or how it would have aided his defense." *McAdams*, 2019 WL 5197732, at *4. McAdams' petition suffers from the same deficiency. McAdams says that if counsel had effectively investigated the case, counsel "would have discovered that the State's own forensic tests showed that Petitioner suffered from erectile dysfunction and, thus, lacked the ability to perform the penetration for which he was charged." (ECF No. 11, PageID.981.) But McAdams' defense counsel did provide medical evidence at trial

12

that he suffered from erectile disfunction, and beyond a conclusory assertion, McAdams fails to identify or provide any description of a state forensic test which would have bolstered this defense. So McAdams' conclusory allegation, without any evidentiary support, is insufficient to show that the Michigan Court of Appeals' denial of this claim was contrary to, or an unreasonable application of, *Strickland*.

## IV.

For the foregoing reasons, the Court DENIES McAdams' petition for a writ of habeas corpus. A separate order will issue on a certificate of appealability and proceeding in forma pauperis on appeal.

Dated: September 27, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE